UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY WILLIAMS,

    Plaintiff,

v.                                                Case No. 13-10306

CITY OF SOUTHFIELD, et al.,

    Defendants.
_____/

**OPINION AND ORDER DISMISSING PLAINTIFF'S STATE LAW CLAIMS**

Pending before the court is Plaintiff's complaint, which alleges the following counts:

- Count I: a 42 U.S.C. § 1983 claim for an excessive use of force in violation of the Fourth Amendment;

- Count II: assault and battery;

- Count III: gross negligence;

- Count IV: a 42 U.S.C. § 1983 claim of "deliberate indifference to serious medical need" in violation of the Fourteenth Amendment;

- Count V: a 42 U.S.C. § 1983 claim for municipal liability.

Counts I, IV, and V assert claims under federal law; the other two counts assert claims under state law.

The court has original jurisdiction over Plaintiff's § 1983 claims. 28 U.S.C. § 1331. Because Plaintiff's state and federal law claims arise out of the same incident and share a common nucleus of operative fact, the court could exercise its supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367. However,

because an exercise of supplemental jurisdiction will not promote judicial economy, the convenience of the parties, fairness, or comity, the court will dismiss the state law claims.

## I. BACKGROUND

Plaintiff alleges that two Southfield police officers, after arriving at the scene of a disturbance, slammed Plaintiff down and put their knees in his back. The officers allegedly handcuffed Plaintiff and placed him in the back of a police car, where he allegedly suffered a diabetic seizure. Plaintiff alleges that, after arriving at the Southfield police station, the officers slammed Plaintiff's head into an elevator wall, causing Plaintiff's eye to bleed. He alleges that, as a result of head trauma, he fell to the ground, and that, after the fall, the two police officers placed Plaintiff on his stomach and pushed their knees into his back but then lifted him by the handcuffs, allegedly injuring his wrists. Plaintiff further alleges that he received medical treatment at a hospital, including stitches to his face.

## II. DISCUSSION

To litigate in federal court, a party must invoke a basis for original jurisdiction, such as federal-question jurisdiction or diversity jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. A federal court may exercise supplemental jurisdiction over each claim in an action that shares a common nucleus of operative fact with a claim that invokes the court's original jurisdiction. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). However, supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present, a federal court should hesitate to exercise

jurisdiction over the state claims . . . ." 383 U.S. at 726. Supplemental jurisdiction may be denied "if the federal claims are dismissed before trial," if "it appears that the state issues substantially predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims. *Id.* at 726-27.

A federal court may exercise supplemental jurisdiction under 28 U.S.C. § 1367, which recognizes a court's discretion to decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). Subsections two and four govern the present action.

"In deciding whether to exercise supplemental jurisdiction . . , a judge must take into account concerns of comity, judicial economy, convenience, fairness, and the like." *Senra v. Smithfield*, 715 F.3d 34, 41 (1st Cir. 2013).

### A. Dismissal Under 28 U.S.C. § 1367(c)(4)

A district court may decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(4) if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." "Congress's use of the word 'other' to modify 'compelling reasons' indicates that what ought to qualify as 'compelling reasons' for declining jurisdiction under subsection (c)(4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)-(3)." *Exec. Software N. Am., Inc.*

3

*v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Res v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

### 1. There are "Compelling Reasons" for Dismissing Plaintiff's State Law Claims

"Compelling reasons" for the purposes of [§ 1367] (c)(4) . . . should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness and comity." 24 F.3d. at 1557 (internal citations omitted); *see also Palmer v. Hosp. Auth. of Randolph Cnty*, 22 F.3d 1559, 1569 (11th Cir. 1994). The circumstances of the particular case, the nature of the state-law claims, the character of the governing state law, and the relationship between the state and federal claims (including the possibility of jury confusion) inform a decision to exercise or decline supplemental jurisdiction. *Gibbs*, 383 U.S. at 726-727.

Mixing federal-law claims with supplemental state-law claims can cause procedural and substantive problems; in the interest of judicial economy and convenience, these problems should be avoided. *See Palmer*, 22 F.3d at 1569. Even where, as in the present case, the federal and state claims arise out of the same factual background, the simultaneous litigation of such claims may prolong pre-trial practice; complicate the trial; lengthen and make more complex the jury instructions, potentially confusing the jury; result in inconsistent verdicts, and cause post-trial problems with respect to judgment interest and the availability of prevailing-party attorney fees. Consequently, the apparent judicial economy and convenience to the parties of a court exercising supplemental jurisdiction over a state claim may be substantially offset by problems simultaneously created.

### a. Applicable Legal Standards and Defenses

Different legal standards and defenses apply to the state and federal claims. If used together, these legal standards and defenses could cause jury confusion. To succeed in a § 1983 claim for excessive force, the plaintiff must "show that [the officer's] use of force was unjustified." *Miller v. Taylor*, 877 F.2d 469, 472 (6th Cir. 1989). Federal law examines excessive force through the objective reasonableness standard set by the Fourth Amendment. *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005). The mere use of force—even if unnecessary—does not satisfy this burden. *Lyons*, 417 F.3d at 575. A jury must evaluate "the objective reasonableness of the officer's conduct in view of the facts and circumstances facing the officer." 417 F.3d at 575. And the jury must ignore the officers' underlying motivation. Good intentions do not justify an objectively unreasonable use of force. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Under Michigan law, assault and battery are considered intentional torts. Consequently, a jury must consider the intent or willfulness behind the officer's actions to determine whether an assault or battery has occurred. *Young v. Morall*, 101 N.W.2d 358, 362 (Mich. 1960). Since "the mere fact that a person has inflicted bodily injury on another does not render him or her guilty of an assault and battery unless the result was intended or should have been anticipated as the natural result of the wrongful act," Gillespie Mich. Crim. L. & Proc. § 40:8 (2d ed.), a jury must evaluate the subjective intent of an officer's actions when evaluating a state claim of assault and battery. *Young*, 101 N.W.2d at 362.

Using different legal standards and defenses on the same conduct could lead to jury confusion because the jury would have to constantly switch from one standard to another for claims that arise from a single act. The jury would have to objectively evaluate the officers' actions without regard to the officers' intent for the federal excessive force claim, yet take the officers' intent into consideration when evaluating the state assault and battery claim. This constant switching between standards would increase the danger of a jury applying the wrong standard to a claim.

Moreover, jury confusion may arise as a result of the jury having to evaluate the claims through an objective or subjective standard, yet apply defenses that may or may not use an objective standard. For instance, if an assault and battery occurs as the result of an intentional or wrongful act, a defendant may plead self-defense. If a defendant pleads self-defense, he has the burden of showing that he had a "reasonable belief of great danger" before he responded "with the appropriate amount of force to foreclose the threat." *Alexander v. Riccinto*, 481 N.W.2d 6, 8 (Mich. Ct. App. 1991). Thus, the jury would be tasked, using a subjective analysis, to determine if there is a valid assault and battery claim, yet be tasked, using an objective analysis, to determine the sufficiency of a possible defense.

### b. Immunity

Another issue that may cause jury confusion is the fact that state and federal law apply different standards of immunity. Federal qualified immunity does not apply if an officer violates a clearly established statutory or constitutional right of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Michigan law, meanwhile, applies different standards of qualified immunity, sometimes

6

denying immunity if an officer failed to act in good faith; sometimes denying immunity if an officer was grossly negligent. *Odom v. Wayne Cnty.,* 760 N.W.2d 217, 228 (Mich. 2008).

Applying these various standards of qualified immunity could lead to jury confusion, inconvenience to the parties, and other trial complications. A jury would, while considering a single event, have to switch from one type of analysis to another to decide whether a defendant enjoys federal or state qualified immunity. Switching between standards could increase the danger that a jury will apply the wrong legal standard to a claim.

### c. Municipal Liability

Federal law and state law have different standards of municipal immunity, which if used together could lead to jury confusion or an unfair outcome. Municipal liability under § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny. "The doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." 436 U.S. at 662 n.7. Instead, municipal liability depends upon whether a "supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

In Michigan, the law of municipal liability is governed by an immunity statute, Mich. Comp. Laws § 691.1407, which states that "a governmental agency is immune from tort liability if the agency is engaged in the exercise or discharge or a governmental

function." § 691.1407(1). Under the statute, a municipality can only be held liable "with respect to providing medical care or treatment to a patient." § 691.1407(4).

Michigan municipal immunity is broader than federal municipal liability. Further, under state law, there is no issue of authorization or acquiescence. This dichotomy could lead to a verdict that exonerates the municipality from § 1983 liability simply because it cannot be liable for the state tort.

### d. Recoverable Damages

A plaintiff may recover punitive damages from an individual (in his individual capacity) under § 1983. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267, 271 (1981). A plaintiff may recover exemplary damages, but not punitive damages, for a tort under state law. *Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 55 (Mich. 1980). "Punitive" and "exemplary" damages differ:

> Exemplary damages are compensation for injury to feelings and are awardable where the defendant commits a voluntary act which inspires feelings of humiliation, outrage, and indignity. . . . A plaintiff must establish that the act giving rise to the damages was voluntary, that the voluntary act inspired feelings of humiliation outrage and indignity, and that the conduct was malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiffs' rights
>
> Punitive damages, unlike exemplary damages, are not intended to compensate the injured party but, rather, to punish the wrongdoer and to deter him or her, and others, from similar extreme conduct.

7 Mich. Civ. Jur. *Damages* § 161 (2013) (footnotes omitted); *see also Newport*, 453 U.S. at 266-67; *Ass'n Research & Dev. Corp.*, 333 N.W.2d 206, 211 (Mich. Ct. App. 1983).

Allowing punitive damages for some claims but not others may result in jury confusion and an unfair verdict. The jury would be instructed that they *may* "punish" for

an egregious § 1983 violation, but that they may *not* "punish" for even the most obvious violation of state law.  This difference could lead a jury to award more for a proven § 1983 claim merely to "compensate" for the jury's inability to award punitive damages for the state law claims.  It could also lead a jury to reduce an award if it concluded, incorrectly, that because Michigan law does not permit punitive damages, a plaintiff does not deserve punitive damages for his federal claims, either.  The availability of punitive damages for the federal claims, but not for the state claims, may cause an unfair outcome.

### e. Conclusion: Compelling Reasons Exist to Dismiss Plaintiff's State Claims

Given the disparity between the state and federal claims as a result of their different legal standards and defenses, potential immunity, vicarious liability and recoverable damages, exercising supplemental jurisdiction over these claims would result in confusion, inconvenience, and potentially unfair results.

### 2. There are "Exceptional Circumstances" for Dismissing Plaintiff's State Law Claims

The phrase "exceptional circumstances" in 28 U.S.C. § 1367(c)(4) limits the broad discretion that district courts once had under *Gibbs* to deny supplemental jurisdiction in any case.  *See, e.g.*, *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998); *Exec. Software*, 24 F.3d at 1558.  However, Congress did not restrict a district court's ability to dismiss claims to cases that were "ridiculous" or "impractical." *Exec. Software*, 24 F.3d at 1558, 1560 (citing *Hays Cnty. Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) (holding that exceptional

9

circumstances were present when parallel state proceedings were underway and therefore the adjudication of state claims would be a "waste of judicial resources")).

Exceptional circumstances are present in this case because of the likelihood of jury confusion, judicial inefficiency, substantial inconvenience to the parties, and potential unfairness in outcome that could result if Plaintiff's state law claims and federal law claims are tried together.  Though there will be some duplication of effort required by Plaintiff and Defendants if Plaintiff decides to pursue the state claims in state court, any advantages to be gained by trying all claims together are outweighed by the potential for confusion about the issues, legal theories, defenses, and possible relief.

Thus, the court will not exercise supplemental jurisdiction and will dismiss without prejudice the state-law claims.

## B. Dismissal Under 28 U.S.C. § 1367(c)(2)

Separately, a district court may decline the exercise of supplemental jurisdiction pursuant to § 1367(c)(2) if "the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2). The state claims presented here raise problems, including the need to introduce evidence inapplicable to—indeed, inconsistent with—the evidence relevant to the federal claims, the need to introduce additional witnesses, the presence of disparate legal theories on both claims and defenses, and the need to create expanded and contradictory jury instructions.  The state claims presented in this case would, for these reasons, predominate over the § 1983 federal claims over which the court has original jurisdiction.  Under 28 U.S.C. § 1367(c)(2), the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

### III. CONCLUSION

The inclusion of Plaintiff's state claims for assault and battery and gross negligence with Plaintiff's federal law claims under 42 U.S.C. § 1983 could lead to jury confusion, judicial inefficiency, inconvenience to the parties, and an unfair outcome. Additionally, these claims would predominate over Plaintiff's § 1983 federal claims. Pursuant to 28 U.S.C. §§ 1367(c)(2) and (4), the court exercises its discretion to decline supplemental jurisdiction over Plaintiff's state law claims.  Accordingly,

IT IS ORDERED that Plaintiff's state law claims for assault and battery (Count II), and for gross negligence (Count III) are DISMISSED WITHOUT PREJUDICE.


        s/Robert H. Cleland  
        ROBERT H. CLELAND  
        UNITED STATES DISTRICT JUDGE

Dated:  July 26, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 26, 2013, by electronic and/or ordinary mail.

        s/Richard Loury for Lisa G. Wagner  
        Case Manager and Deputy Clerk  
        (313) 234-5522